## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CALABRIA RISTORANTE, INC., | : | |
| | : | **Civil Action No. 21-3712 (JXN) (AME)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| RUGGIERO SEAFOOD, INC.; | : | |
| PERFORMANCE FOOD GROUP a.k.a. | : | |
| PERFORMANCE FOOD SERVICE; | : | |
| ROMA FOOD ENTERPRISES, INC.; | : | |
| NGC, INC. d/b/a THE TOWN DOCK; and | : | |
| JOHN DOES (1-10) and XYZ | : | |
| CORPORATIONS (1-10) (Multiple, | : | |
| Alternative, Fictitious Entities), | : | |
| | : | |
| Defendants. | : | |

**NEALS**, District Judge:

This matter comes before the Court on the following three motions to dismiss Plaintiff Calabria Ristorante, Inc.'s ("Plaintiff") class action complaint (ECF No. 1-2) (the "Complaint") filed pursuant to Federal Rule of Civil Procedure 12(b)(6): (1) Defendant Performance Food Group a.k.a. Performance Food Service's ("Performance Food") motion to dismiss (ECF No. 10); (2) Defendant NGC, Inc. d/b/a The Town Dock's ("Town Dock") motion to dismiss (ECF Nos. 12-13); and (3) Defendant Ruggiero Seafood, Inc.'s ("Ruggiero") motion to dismiss (ECF No. 17). Plaintiff opposed, and Performance Food, Town Dock, and Ruggiero (collectively, the "Defendants") replied. (ECF Nos. 22-24, 26-28, respectively). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331-1332, 1367. Venue is proper pursuant to 28 U.S.C. § 1441(a).

The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the

reasons set forth below, Performance Food's motion to dismiss (ECF No. 10) is **GRANTED in part** and **DENIED in part**, **GRANTED** as to Counts One through Six, and Count Eight in Plaintiff's Complaint (ECF No. 1-2), which are **DISMISSED** *with prejudice*; and **DENIED** as to Count Seven.  Town Dock's motion to dismiss (ECF Nos. 12-13) is **GRANTED** and Plaintiff's Complaint (ECF No. 1-2) in its entirety is **DISMISSED** *with prejudice as to Town Dock*. Ruggiero's motion to dismiss (ECF No. 17) is **GRANTED** and Plaintiff's Complaint (ECF No. 1-2) in its entirety is **DISMISSED** *with prejudice as to Ruggiero*.

## I.    BACKGROUND AND PROCEDURAL HISTORY[1]

Plaintiff brought this action "on behalf of itself, and all other similarly-situated customers[2] of [] Defendants" who purchased Defendants' frozen calamari.  (Compl. ¶ 4).  Because Plaintiff "utilizes calamari in various forms for their menu items[,]" it purchases the frozen calamari that are "packaged in plastic bags that are filled with glaze and/or added frozen water."  (*Id.* ¶¶ 14-16). Plaintiff relies on Defendants to "represent and identify the amount and/or net weight of frozen calamari on the exterior of the box and/or packaging for the frozen calamari."  (*Id.* ¶ 17).  In July 2014, Plaintiff filed a complaint with the New Jersey Office of Weights and Measures ("Weights and Measures") after it "became concerned" that the "amount of frozen calamari represented . . . did not equal the actual net weight of the frozen calamari . . . ."  (*Id.* ¶¶ 20).

On July 16, 2014, Weights and Measures "tested Defendants' frozen calamari products" and determined that the "quantity" and "percentage" of frozen calamari in Defendant Roma Food Enterprises, Inc.'s ("Roma") frozen calamari and that of Town Dock's were below the "quantity declared" by both.  (*Id.* ¶¶ 21-22(a-d)).  Plaintiff filed another complaint in 2017 with the Ocean

---

[1] The following factual allegations are taken from the Amended Complaint, which the Court must accept as true when ruling on a motion to dismiss.  *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 262 n.27 (3d Cir. 2010).
[2] Notwithstanding the reference to "similarly situated customers," Plaintiff is the sole named plaintiff in this action.

County, New Jersey's Department of Consumer Affairs that was ultimately referred to the state Office of Weights and Measures.  (*Id.* ¶¶ 23-24).  Since then, Defendants "continue to misrepresent the net weight of the frozen calamari on their packaging."  (*Id.* ¶ 27).  As a result, Plaintiff "suffer[ed] substantial ascertainable losses and damages . . . ."  (*Id.* ¶ 29).

Plaintiff alleges causes of action for: (i) breach of contract (Count One); (ii) breach of duty of good faith and fair dealing (Count Two); (iii) breach of express warranty (Count Three); (iv) breach of implied warranty (Count Four); (v) negligence (Count Five); (vi) negligent misrepresentation (Count Six); (vii) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 (the "CFA") (Count Seven); and (viii) violation of the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18 (the "Truth-in-Consumer Act") (Count Eight). This matter is ripe for consideration.

## II.      <u>LEGAL STANDARD</u>

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient as long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations omitted).  On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted).  Indeed, a complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2)

the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

## III.   DISCUSSION[3]

### A.   Plaintiff's Negligence Claims Are Barred by the Economic Loss Doctrine

#### 1.   The Negligence Claim (Count Five)

"Under New Jersey law, the economic loss doctrine defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation and internal quotations omitted). The doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract . . . ." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). In other words, the economic loss doctrine "functions to eliminate recovery on a contract claim in tort claim clothing." *G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588-89 (D.N.J. 2014) (citation and internal quotations omitted).

Defendants argue that the economic loss doctrine prohibits Plaintiff from seeking damages in negligence when such remedies are available in contact. (*See* ECF No. 10-1 at 14-16; ECF No. 13 at 27-28; ECF No. 17-1 at 22-28)[4]. In citing *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC,*

---

[3] The Court notes that Roma has neither moved for dismissal nor entered a notice of appearance. Performance Food claims that Roma "no longer exists" and that Roma "is a defunct entity that previously merged with" Performance Food in 2008. ((ECF No. 1 at ¶¶ 2, 17); *see also* Michelle M. Benton's Declaration (ECF No. 1-4 at ¶ 3)). To that end, Performance Food requests that Roma be dismissed "as a separate defendant" (ECF No. 10 at 8 n.1), however, Performance Food's proposed Order does not explicitly dismiss Roma from this action (ECF No. 12-1). Accordingly, the Court takes no action as to Roma. Performance Foods may submit a proposed Order dismissing Roma for the Court's consideration.

[4] The Court refers to the ECF Header page numbers.

4

516 F. Supp. 3d 407 (D.N.J. 2021) and *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559 (D.N.J. 2016), Plaintiff contends that Rule 8 allows it to raise negligence claims in the alternative. (ECF No. 22 at 46-47).  In *Durr Mech. Constr., Inc.*, the Court denied a dismissal as to the quasi contract claim because the plaintiff was free to raise alternative theories of recovery at the pleading stage.  516 F. Supp. 3d at 416 (internal quotations omitted) (emphasis removed); *see also Block*, 221 F. Supp. 3d at 578 (same).  While "alternative, or backup [claims], to a contract claim" are permitted (*see Gaviria v. Lincoln Educ. Servs. Corp.*, 547 F. Supp.3 d 450, 462 (D.N.J. 2021) (citation omitted), Plaintiff's negligence claim is barred by the economic loss doctrine.

The test to determine whether the economic loss doctrine applies, is whether Plaintiff "seeks to enhance the benefit of the bargain it contracted for," or whether Plaintiff claims that Defendants "breached a duty owed to [] [P]laintiff that is independent of the duties that arose under the contract . . . ."  *G & F Graphic Servs., Inc.*, 18 F. Supp. 3d at 588 (citation and internal quotations and brackets omitted).  The Court must consider "whether the tortious conduct is extrinsic to the contract between the parties."  *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009) (citation omitted).  Here, because Plaintiff seeks damages for Defendants' alleged failure to meet its contractual duties (Compl. ¶¶ 41, 43, 63-64), the Court finds that the negligence claim is barred by the economic loss doctrine.

First, because Plaintiff alleges that Defendants breached their "common duty of reasonable care" of "supplying, distributing, packing and/or marketing its frozen calamari in the amounts represented on their packaging" (Compl. ¶ 63), the alleged "tortious conduct is [not] extrinsic to" Defendants' contract with Plaintiff (*see State Capital Title & Abstract Co.*, 646 F. Supp. 2d at 676 (citation omitted)).  Second, this action is like *Pappalardo v. Combat Sports, Inc.*, No. 11-1320, 2011 WL 6756949 (D.N.J. Dec. 23, 2011), wherein plaintiff, a purchaser of composite barreled

baseball bats, sued the manufacturer for breach of implied warranty and negligence among other claims. *Id.* at *1. The court barred plaintiffs' negligence claim under the economic loss doctrine because the damages sought were limited to "the purchase price of the bats . . ." with no allegations of damages related to player safety. *Id.* at *12. *See* ECF No. 10-1 at 15). Third, and finally, the economic loss doctrine also bars Plaintiff's negligence claim under the Uniform Commercial Code. (ECF No. 13 at 27-28). *See Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673, 682 (D.N.J. 2012). Accordingly, Count Five is dismissed *with prejudice*.

### 2.    The Negligent Misrepresentation Claim (Count Six)

The economic loss doctrine does not apply "when a party uses misrepresentations to induce another into entering an agreement." *Durr Mech. Constr., Inc., LLC*, 516 F. Supp. 3d at 418 (citation omitted). Here, Plaintiff alleges that Plaintiff "reasonably relied on Defendants'" negligent misrepresentations. (Compl. ¶¶ 69-70). However, because Plaintiff does not allege that Defendants fraudulently caused Plaintiffs to rely on Defendants' representations, the negligent misrepresentation claim is also precluded. *CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P.*, 940 F. Supp. 2d 141, 159 (D.N.J. 2013).

Performance Food correctly argues that an "exception" to the economic loss doctrine is not present because "[t]here is no allegation of any extrinsic fraud" for "conduct falling outside of the performance of the contract." (ECF No. 26 at 19); *see also Stratis v. BMW of North Am., LLC*, No. 22-6929, 2023 WL 3092188, at *13 (D.N.J. Apr. 26, 2023) (dismissing negligent misrepresentation claim pursuant to the economic loss doctrine). To be sure, even a cursory review of the Complaint shows that Plaintiff does not "allege a fraud separate and distinct from the performance of the contract."[5] *State Capital Title & Abstract Co.*, 646 F. Supp. 2d at 677.

---

[5] Because the economic loss doctrine bars the claim, this obviates the need to consider whether Plaintiff's claim is also barred by the U.C.C. (*See* ECF No. 24 at 42).

Accordingly, Count Six is dismissed *with prejudice*.

**B.      Federal Law Does Not Preempt Plaintiff's Claims**

Performance Food and Town Dock argue that Plaintiff's claims are preempted by the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq*. (the "Food Act") (*see* ECF No. 10-1 at 11) and the Fair Packaging and Labeling Act, 15 U.S.C. § 1451, *et seq*. (the "Labeling Act") (ECF No. 13 at 9).  The Court determines they are not preempted.

The "Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, invalidates state law that interferes with or is contrary to federal law."  *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (citation and internal quotations omitted).  To that end, state laws that "interfere[] with or [are] contrary to federal law, must yield."  *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010) (citation and internal quotations omitted).  Courts decide whether "a conflict between state and federal law requires application of that power."  *Deweese v. Nat'l R.R. Passenger Corp.*, 590 F.3d 239, 245 (3d Cir. 2009) (citation omitted).

"Federal law can preempt state law in three ways: (1) express preemption, (2) field preemption, and (3) conflict preemption."  *Farina*, 625 F.3d at 115 (citation omitted).  "Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law." *Id.* (citation omitted).  Field preemption "applies where the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."  *Id.* (citation and internal quotations omitted).  Conflict preemption "nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Id.* (citation and internal quotations omitted).

At the outset, Performance Food's and Town Dock's preemption arguments are not based on Third Circuit authority.  (ECF No. 10-1 at 29-31; ECF No. 13 at 28-30).  Indeed, Town Dock contends that the "Court should follow its sister courts and dismiss" Plaintiff's claims "pursuant to the doctrine of preemption."  (ECF No. 13 at 30).  The Court finds adequate precedent within this Circuit and the sister court cases distinguishable and therefore non-persuasive.

The Food Act may only preempt state law if its labeling requirements expressly preempt the same.  *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 92 n.2 (D.N.J. 2011) (Food Act preempts State law only if it "is expressly preempted.") (citation omitted); *see also Stewart v. Smart Balance, Inc.*, No. 11-6174, 2012 WL 4168584, at *4 (D.N.J. June 26, 2012) (noting that the "parties appropriately confine their [Food Act preemption] arguments to express preemption.").  Here, the Court finds that Plaintiff's claims are not preempted by either the Food Act or the Labeling Act.

### 1.    The Food Act[6]

The Food Act "empowers" the Food and Drug Administration (the "FDA") "to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled.'" *Smajlaj*, 782 F. Supp. 2d at 92 (quoting 21 U.S.C. § 393(b)(2)(A)).  The 1990 Amendments to the Food Act "expressly preempt inconsistent state nutritional content labeling requirements."  *Id.* at 92 (citing 21 U.S.C. § 343-1(a)(1)-(5)).  This means that no "state may impose any requirement respecting any claims of nutritional contents on labels that is not identical to the requirement imposed by the [Food] Act."  *Id.* at 92 (citation and internal quotations omitted).  State laws, however, "are not preempted so long as the requirements they impose on labeling are identical to the requirements of the" Food Act.  *Id.* at 93 (citations omitted).

---

[6] Town Dock claims that there is no private right of action under the Food Act.  (ECF No. 13 at 29; ECF No. 27 at 15).  Because Plaintiff does not attempt to assert a Food Act claim, the Court does not address this argument.

In an express preemption analysis, like in any preemption analysis, the Court begins "by applying a presumption against preemption." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (citation omitted).  In so doing, the Court looks to "Congress's express statements" and to the "structure and purpose of the statute as a whole, as revealed not only in the text, but through the" Court's "understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Farina*, 625 F.3d at 115 (citation and internal quotations omitted).

Here, Performance Food argues that Plaintiff's claims are preempted by 21 U.S.C. §§ 101.7(a) and 343-1(a).  (ECF No. 10-1 at 29).  In opposition, Plaintiff argues against preemption on the basis that the claims are "consistent with the" Food Act and "do not seek to supplement or add to any federal labeling requirements."  (ECF No. 22 at 11).  The Court agrees with Plaintiff.

The Food Act provides that "no State or political subdivision may directly or indirectly establish . . . any requirement for nutrition labeling of food . . . made in the label or labeling of food that is not identical to the requirement of" the Food Act's labeling requirements in section 343(r).  21 U.S.C. § 343-1(a)(5).  21 C.F.R. § 101.7(a) requires that "[t]he principal display panel of food in package form" to "bear a declaration of the net quantity of contents."  This is "expressed in the terms of weight, measure, numerical count, or a combination of numerical count and weight or measure." *Ibid.*  Such declaration must "express an accurate statement of the quantity of contents of the package[,]" but the regulation "recognize[s]. . . [r]easonable variations caused by loss or gain of moisture during the course of good distribution practice or by unavailable deviations in good manufacturing practice . . . ."  21 C.F.R. § 101.7(q).

Performance Food argues that the "Complaint seeks to foist Plaintiff's own labeling standards on [Performance Food] with reference to what Plaintiff believes to be the appropriate

standard." (ECF No. 10-1 at 30).  The Court, however, agrees that the statutes and regulations at issue here—N.J.S.A. 51:1-29 and N.J.A.C. 13:47K-1.1, *et seq*.—are not "inconsistent with federal law . . . ." (ECF No. 22 at 36).

N.J.S.A. 51:1-29(a)(3) provides in relevant part that "[n]o person shall distribute, . . . [or] sell, . . . any article or commodity in package form, unless the label bears statements" that "[s]pecify[] the net quantity of the contents by weight, measure, count or volume . . . ." "Reasonable variations, tolerances and exemptions" are permitted, which are set by the State superintendent.  51:1-29(a)(3)(b).  In "prescrib[ing] labeling requirements," the purpose of this statute "is to assure that when consumers buy certain quantifiable commodities, . . . a reliable representation must be made to them of the precise quantity they are buying." *State v. CompUSA*, 288 N.J. Super. 413, 415 (App. Div. 1996) (citations omitted).

In further support, Plaintiff argues that N.J.A.C. 13:47K-1.1 adopts the "Uniform Packaging and Labeling Regulation contained in the National Institute of Standards and Technology (NIST) Handbook 130, 2018 edition, at pages 51 through 95," and incorporates the same.  (ECF No. 22 at 35) (quoting N.J.A.C. 13:47K-1.1).  At this juncture, the statutory authorities arguably support Plaintiff's position.  *See* N.J.A.C. 13:47K-5.1(b) (New Jersey allows for "[v]ariations from the declared weight or measure . . . when caused by ordinary and customary exposure to conditions that normally occur in good distribution practice and that unavoidably result in change of weight or measure . . . ."); *see also* N.J.A.C. 13:47K-5.2(a)(1) (The "maximum allowable variations" or "MAV" "conform" to the same NIST Handbook).[7]

---

[7] Plaintiff requests that the Court "take judicial notice" of the NIST Handbook.  (ECF No. 22 at 36 n.6).  The Court may take judicial notice of a "public record[.]" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (citations and internal quotations and brackets omitted).  The "Third Circuit has defined matters of public records narrowly . . . requiring that the document be a publicly available *government* record." *JNL Mgmt., LLC v. Hackensack Univ. Med. Ctr.*, No. 18-5221, 2019 WL 1951123, at *4 (D.N.J. May 2, 2019) (citation omitted).  Because the NIST handbook is an "available *government* record[,]" the Court takes judicial notice of the same.

Next, while Performance Food contends that the Complaint's allegations "focus on the moisture in the calamari . . . implying that this moisture was responsible for the incorrect net weight[,]" (*see* ECF No. 10-1 at 30) (citations omitted)), the Complaint does not read so. Plaintiff does not allege that moisture caused the reduction in the net-weight of frozen calamari sold to Plaintiff. (*See, gen.,* Compl.). Moreover, in paragraphs 2 - 3 and 16, which Performance Food specifically cites (*see* ECF No. 10-1 at 30), Plaintiff does not mention moisture and/or the cause of the reduction. Relatedly, whether "added frozen water" (*see* ¶¶ 2 - 3, 16), is the moisture referred to in 21 C.F.R. 101 § 101.7(q) is not presently before this Court. *See Phillips*, 515 F.3d at 231 (Dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.") (citation omitted)). Therefore, the Court agrees that it should not consider at this stage in the litigation whether the difference in net weight was due to the same moisture noted in 21 C.F.R. 101 § 101.7(q). (ECF No. 22 at 34).

The Complaint also "does not allege anything that could be construed as seeking to impose greater or different labeling obligations upon Defendant[s] than the [Food Act]." *Mason v. Coca-Cola Co.*, 9-220, 2010 WL 2674445, at *3 (D.N.J. June 30, 2010). Plaintiff alleges that it was harmed by "receiv[ing] less frozen calamari than represented on" Defendants' "packaging and [by] pay[ing] for the glaze and/or added frozen water[;]" that Defendants' "frozen calamari product deviated from the" MAV and that they "continue to misrepresent the net weight of the frozen calamari on their packaging[;]" causing Plaintiff "substantial ascertainable losses and damages . . . ." (Compl. ¶¶ 1, 3, 26-27, 29). Because the Complaint does not allege different or conflicting labeling requirements, Plaintiff's claims are not expressly preempted by federal law. *Mason*, 2010 WL 2674445, at *3.

11

Performance Food cites *Jones v. Rath Packing Co.*, 430 U.S. 519 (1977), wherein a California law was preempted by the Federal Meat Inspection Act, 21 U.S.C. § 601, *et seq.* (the "Meat Act") because it did not account for moisture loss.  Since that case found preemption under the Meat Act and not the Food Act, and concerned a California law that was applied to bacon and not frozen calamari, the case is not controlling given the distinguishable facts and federal statutes applied.

Next, Performance Food argues that New Jersey does not allow "reasonable variation[s]" for moisture because no statute adopted the NIST Handbook[8] and in support, cites a single case in a sister jurisdiction for its proposition that "[t]his is textbook preemption[.]" (ECF No. 26 at 7). That case, *Izquierdo v. Mondelez Int;l, Inc.*, No. 16-4697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016), held that "[w]here federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements." (citations omitted).  Also, laws "that impose affirmatively different labeling requirements from federal law" in food labeling "are preempted." *Id.* at *4.

In reviewing a motion to dismiss, the Court assumes the truth of the allegations in the Complaint to determine whether Plaintiff pled plausible causes of action.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citation omitted).  And in reviewing the Complaint, Plaintiff "does not allege anything that could be construed as seeking to impose greater or different labeling obligations upon Defendant[s] than the [Food Act]." *Mason*, 2010 WL 2674445, at *3.  Plaintiff alleges that Defendants harmed it by providing less frozen calamari than it paid for, that Defendants' misrepresented the net-weight of the frozen calamari, and that the frozen calamari did not comport with the MAV.  (Compl. ¶¶ 1, 3, 26-27, 29).  Because the

---

[8] Whether New Jersey adopted § 1.2.6 of the NIST Handbook (ECF No. 26 at 8-9) is not presently before the Court.

Complaint does not allege different or conflicting labeling requirements, Plaintiff's claims are not expressly preempted by federal law. *Mason*, 2010 WL 2674445, at *3.

Moreover, Performance Food cites no Third Circuit authority for its assertion that the Complaint is preempted for merely alleging a claim in the "subject matter that is being challenged[,]" and the Court finds no independent basis to follow or find persuasive the authority of sister courts on this issue. Accordingly, Plaintiff's claims are not preempted by the Food Act.

### 2.      The Labeling Act

The Labeling Act requires that "labels . . . enable consumers to obtain accurate information as to the quantity of the contents" and "facilitate value comparisons." 15 U.S.C. § 1451. Thus, "any packaged consumer commodity" cannot be distributed "unless in conformity with regulations . . . shall provide that--[t]he net quantity of contents (in terms of weight or mass, measure, or numerical count)" are "separately and accurately stated in a uniform location upon the principal display panel of that label . . . ." *Id.* at 1453(a)(2).

Town Dock argues that Plaintiff's claims are preempted by the Labeling Act because sister courts have held that the Labeling Act is "intended to occupy the field as it relates to net weight requirements . . . ." (ECF No. 13 at 30). The state statute and regulation at issue here do not "provide for the labeling of the net quantity of contents of any consumer commodity . . . which are less stringent than or require information different from" those required by the Labeling Act. 15 U.S.C. § 1461. Moreover, the cases cited from sister courts are distinguishable (*see, e.g., Loreto v. Procter & Gamble Co.*, 515 F.App'x 576 (6th Cir. 2013) (concerning whether cold medicine manufacturer made false or misleading representations about the efficacy of vitamin C to be preempted by the Food Act); *In re Trader Joe's Tuna Litig.*, No. 16-1371, 2017 WL 2408117 (C.D. Cal. June 2, 2017) (analyzing whether claims were preempted under the Food Act due to

representation of the accurate amount of tuna in defendant's tuna cans); *Bimont v. Unilever U.S., Inc.*, No. 14-7449, 2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015) (finding state claims concerning defendant's sell of deodorant wee preempted by the Food Act because the state claims are preempted as they impose any non-identical requirement on conduct that could be regulated by the FDA or whose subject matter has been regulated by the FDA)).

The Third Circuit Court of Appeals has noted that "neither Congress nor the FDA intended to occupy the fields of food and beverage labeling and juice products." (*Holk*, 575 F.3d at 339). Thus, the Court finds that the Labeling Act is not the "rare" federal law that is "so powerful as to displace entirely any state cause of action . . . ." *Fourte v. Countrywide Home Loans, Inc.*, No. 7-1363, 2009 WL 2998110, at *4 (D.N.J. Sept. 15, 2009) (citation and internal quotations omitted). Accordingly, Plaintiff's claims are not preempted by the Labeling Act.

### 3.     The Breach of Express Warranty Claim (Count Three)

Performance Food and Town Dock rely on *O'Connor v. Henkel Corp.*, 14-5547, 2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015) and *Horowitz v. Stryker Corp.*, 631 F. Supp. 2d 271 (E.D.N.Y. 2009) to assert that Plaintiff's express warranty claim is preempted. (ECF No. 10-1 at 32; ECF No. 26 at 6-7; ECF No. 27 at 16-17). That Court finds neither case persuasive.

In *O'Connor*, plaintiffs claimed that the total net weight of deodorant/antiperspirant was below the amount advertised on the labels as net weight resulting "from a systematic practice of under-filling by defendants." *Id.* at *7. Defendants contended that federal regulations, namely 21 C.F.R. § 201.62, "permit reasonable variations in amounts that exceed[ed]" those alleged by plaintiffs and that the actual cause of any variation was irrelevant, thereby preempting plaintiffs' claims. *Ibid.* The court disagreed and declined to find preemption on that basis. *Id.* at *9. As to the breach of express warranties claim, plaintiffs argued that defendants breached "these

warranties by providing less deodorant/antiperspirant than indicated on the label." *Ibid.* Defendants sought dismissal "arguing that labels mandated by federal law cannot give rise to liability." *Ibid.* In finding plaintiffs' express warranty claims were preempted, the Eastern District of New York held that 21 C.F.R. § 201.62(a) and (f), which dealt with nonprescription drugs and cosmetics, required that the "net weights listed on product labels" be listed. *Id.* at *10. Thus, because defendants followed federal law in so listing the net weight of products, plaintiffs' claims were preempted by federal law.

Similarly, the court in *Horowitz* preempted plaintiff's breach of express warranty claim because in part because "[u]nder New York law, an action for breach of express warranty requires both the existence of an express promise or representation and reliance on that promise or representation." 631 F. Supp. 2d at 286 (citation omitted). Here, Plaintiff's breach of express warranty claim is analyzed under New Jersey law (*see Volin v. Gen. Elec. Co.* 186 F. Supp. 3d 411, 420 (D.N.J. 2016)) and not New York. Further, unlike in *Horowitz*, Plaintiff bases its express warranty claim on Defendants' misrepresentation. (Compl. ¶ 54).

Plaintiff alleges that Defendants "materially breached their common express warranties under the common law and U.C.C. . . . by failing to provide the express amount of frozen calamari represented on their packaging and/or by charging Plaintiff and the class for the glaze and/or added frozen water." (Compl. ¶ 54). Where a state law concerns an area that is traditionally governed by the states, courts are particularly reluctant to find that it is preempted. This principle is at times stated as a presumption against preemption. *Farina,* 625 F.3d 116 ("The presumption applies with particular force in fields within the police power of the state . . . ."); *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005) ("In areas of traditional state regulation, we assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and

manifest.") (citations and internal quotations omitted).  Courts "are more careful, however, to delimit a federal law's reach" such that "even where there is an *express* preemption clause, a court will diligently determine the substance and scope of Congress' displacement of state law." *Dzielak v. Whirlpool Corp.*, 120 F. Supp. 3d 409, 418 (D.N.J. 2015) (citation and internal quotations omitted).

Here, Performance Food states that the claim is preempted because *O'Connor* and *Horowitz* have "held that a breach of express warranty cause of action based on an incorrect net weight is preempted by federal law." (ECF No. 10-1 at 32).  This Court, in evaluating Plaintiff's express warranty claim, finds that the claim does not interfere with any federal statute or regulation, but rather is based on Defendants' false representations to Plaintiff. *See Fellner v. Tri–Union Seafoods, LLC,* 539 F.3d 237, 249 (3d Cir. 2008) ( "[S]tate tort law and other similar state remedial actions are often deemed complementary to federal regulatory regimes . . . and the Supreme Court has recognized that state tort law can also play an important information-gathering role not easily replicated by federal agencies."); *see also Dzielak.*

In so finding, the Court is persuaded by the Sixth Circuit Court of Appeals case, *Fabian v. Fulmer Helmets, Inc.,* 628 F.3d 278, 282 (6th Cir. 2010). There, the National Highway Traffic Safety Authority ("NHTSA") required that motorcycle helmets pass certain safety tests. *Id.* at 279. Manufacturers so signify by affixing a "DOT" sticker to their helmets. *Id.* at 282. Defendant sold helmets that carried the DOT sticker but were later shown failed the applicable safety tests. *Id.* at 279.  Plaintiff alleged that he purchased defendant's helmet in reliance on the (false) assurances implied by the DOT sticker. *Id.* at 280.  Plaintiff brought a state law action in part for misrepresentation and breach of warranty. *Ibid.*  The Sixth Circuit Court of Appeals found that plaintiff's claims did not "disturb" NHTSA's "labeling requirements" and did not "add a new

requirement that interfere[d] with" what is required.  *Id.* at *283.  This follows closely with rulings in this District.  *Millman v. Medtronic*, No. 14-1465, 2015 WL 778779, *6 (D.N.J. Fed. 24, 2015) (preempting plaintiff's breach of warranty and other claims "because they ... seek to impose additional requirements[.]"); *Morton v. Allergan, Inc.*, No. 14-1312, 2015 WL 12839493, at *4 (D.N.J. Apr. 2, 2015) (citing *Cornett v. Johnson & Johnson*, 211 N.J. 362, 392 (2012) ("stating that an express warranty claim is not preempted insofar as it is based on voluntary statements, i.e., statements not approved by the FDA or mandated by the FDA about the use or effectiveness of the product[.]")).  Accordingly, the Court finds that the breach of warranty claim is not preempted.

### C.    New Jersey Law Does Not Preclude the Complaint

Performance Food argues that the Complaint should be dismissed because there is no private right of action under N.J.S.A. 51:1-29 and N.J.S.A. 51:1-105.  (ECF No. 10-1 at 32-36). In support, Performance Food once again relies only on cases in sister jurisdictions.  (*Id.* at 35-36). The Court disagrees.

First, Plaintiff's claims "are [not] based entirely on allegations that Defendants violated Title 51[.]" (ECF No. 10-1 at 35).  For example, Plaintiff's breach of contract claim alleges that Performance Food breached its contract with Plaintiff because it received less frozen calamari than it paid for.  (Compl. ¶¶ 41-42).

Second, Performance Food has not cited any controlling decision that provides that the Court should dismiss the Complaint because Title 51, or any state statute, provides an enforcement action.  In the one New Jersey state case cited, the court did not apply Title 51, dealt with an insurance claim, and is otherwise factually distinguishable.  *See R.J. Gaydos Ins. Agency v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132 (2001) (concerning whether plaintiff had a private right of action under the New Jersey's Fair Automobile Insurance Reform Act).  The issue here is not

whether Title 51 provides a private right of action, which it does not, but whether Plaintiff has alleged facts sufficient to state plausible causes of action.

As to the CFA claim, Performance Food cites a sister court case to suggest that the claim should be dismissed (*see Patane v. Nestle N. Am. Inc.*, 314 F. Supp. 3d 375 (D. Conn. 2018)). This District has specifically held that CFA claims may be alleged even when "premised on violations of statutes and regulations either directly promulgated under the CFA or independent of the CFA where the conduct evidences unconscionable commercial practices." *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 563 (D.N.J. 2013) (citations omitted).

In its reply, Performance Food distinguishes *Lemelledo v. Beneficial Mgmt. Corp.*, 150 N.J. 255 (1997) (ECF No. 26 at 11-12) to demonstrate that Plaintiff may not plead a CFA claim.  (ECF No. 22 at 41-44).  The Court disagrees.  There, the New Jersey Supreme Court held that the CFA was "broad" enough "to include both lending and insurance-sales practices" and applied the statute to "the sale of insurance in conjunction with lending . . . ."  *Id.* at 266.  Performance Food misapplies the test "to overcome the presumption that the CFA applies to a covered activity" to support its position that the CFA does not provide a private cause of action.  *Id.* at 270.  Rather, the Supreme Court explained that because the CFA "complements" other statutes by "allowing for regulation by the Division of Consumer Affairs and a private cause of action to recover damages[,]" an action for damages, "in no way inhibits enforcement of the other statutes, because a court can assess damages in addition to any other penalty to which a defendant is subject."  *Id.* at 273 (citation omitted).

The Court similarly rejects Performance Food's assertion that in pursuing its CFA claim, Plaintiff creates a conflict due to the Office of Weights and Measures' ability to enforce Title 51 violations.  The court in *Lemelledo* noted that a court "entertaining a private cause of action under

the CFA might, in its discretion, defer to an agency that legitimately has exercised its jurisdiction" by "stay[ing] proceedings until the agency has made factual determinations and awarded relief . . . ." *Id.* at 275.  Here, no such agency has exercised jurisdiction.  Thus, any proposed conflict (ECF No. 26 at 11-12) is a non-issue.

Likewise, in *Daaleman v. Elizabethtown Gas Co.*, the New Jersey Supreme Court raised a concern of two state agencies—the Division of Consumer Affairs and the Board of Public Utilities Commissioners—potentially having "the right to exercise concurrent jurisdiction and control over Elizabethtown [Gas]'s billings, with a real possibility of conflicting determinations, rulings and regulations affecting the identical subject matter."  77 N.J. 267, 272 (1978).  This is not the issue here.  *Hampton Hosp. v. Bresan*, 288 N.J. Super. 372 (App. Div. 1996) is similarly not persuasive.

Performance Food next raises several arguments that are not relevant to the Court's analysis.  First, Performance Food states that "Plaintiff has no response to" its "assertion that it only sought to file a class-action lawsuit after unsuccessfully lobbying" the Office of Weights and Measures (ECF No. 26 at 12), which is neither dispositive nor germane here.

Second, Plaintiff attaches an email chain from July 30, 2020, to September 9, 2020, between counsel Richard M. King, Jr., and employees of Weights and Measures.  (ECF No. 26-3) ("Exhibit 2").  While the Court "generally consider[s] only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record" (*see Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citation and internal brackets and quotations omitted), it may consider "matters extraneous to the pleadings" if they are "*integral to or explicitly relied* upon in the complaint" without converting the motion to dismiss to one for summary judgment under Federal Rule of Civil Procedure 12(d).  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Here, although Plaintiff references "Weights and Measures' investigation" and cites to an email communication between the Gloucester County Department of Weights and Measures and Weights and Measures (Compl. ¶¶ 25-26), Plaintiff did not reference the communications in Exhibit B or discuss its counsel's communications with Weights and Measures in the Complaint. As a result, Exhibit B is "extraneous to the Complaint" and because the Court finds that it is not *integral to or explicitly relied* upon in the Complaint (*see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citations omitted)), it does not consider Exhibit B in its decision here.

**D.      The Court Has Subject Matter Jurisdiction and the Majority of Plaintiff's Claims Are Time-Barred**

**1.      Plaintiff Has Article III Standing**

Performance Food argues that Plaintiff lacks Article III standing (*see* ECF No. 10-1 at 36-39), and Town Docks argues that Plaintiff lacks such standing to assert a CFA claim.  (ECF No. 13 at 24-26).  Though the parties conflate Article III standing with the affirmative defense of statute of limitations, the Court finds that Plaintiff has standing and Plaintiff's claims, except the CFA claim as to Performance Food only, are time-barred by the statute of limitations.

Federal courts are "courts of limited subject matter jurisdiction, empowered by Article III of the Constitution to hear only cases and controversies." *Finkelman v. National Football League*, 810 F.3d 187, 189 (3d Cir. 2016) (internal quotations omitted).  If Plaintiff meets the cases and controversies requirement, it is "able to sue in federal court[] . . . ." *Id.* at 189.  To do so, Plaintiff "must establish standing to sue." *Weichsel v. JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 111 (3d Cir. 2023) (citation and internal quotations omitted).

At the pleading stage, Plaintiff must allege "that he (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 111.  (citation and internal quotations omitted).  In its

analysis, the Court must "assume" that Plaintiff "has stated valid legal claims." *Id.* at 111 (citation and internal quotations omitted).

Injury-in-fact is demonstrated by alleging that Plaintiff "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Id.* at 111 (citation and internal quotations omitted).  Concrete means that the injury is "real, and not abstract[.]" *Id.* (citation and internal quotations omitted).  "An alleged injury is particularized when it has affected the plaintiff in a personal and individual way." *Id.* at 111 (citation and internal quotations and brackets omitted).

Initially, the Court notes that Plaintiff does not directly address Performance Food's lack of standing argument.  Indeed, despite Performance Food asserting that all of Plaintiff's claims lack standing (*see* ECF No. 10-1 at 36-39), Plaintiff argues only that it has standing to proceed with its CFA claim because it suffered an "ascertainable loss or injury . . . ." (ECF No. 22 at 33). Nevertheless, the Court finds that Plaintiff has standing to proceed with its claims.

While Performance Food argues that Plaintiff lacks standing because it "knew about" and was on "notice" of the alleged harm yet continued purchasing the frozen calamari from Performance Food (*see* ECF No. 10-1 at 36-37), Plaintiff's "allegation[s] of financial harm" (*see* Compl. ¶¶ 3-4, 29) "satisf[y] each of the components of the injury-in-fact requirement." *Weichsel*, 65 F.4th at 111 (citation and internal quotations and brackets omitted).  Town Dock argues that Plaintiff fails to meet the injury-in-fact element under the CFA.  While the court in *Pappalardo* noted that a plaintiff must allege an ascertainable loss (ECF No. 13 at 25) it did not state that such loss was a prerequisite for standing.  Relatedly, courts in this District have denied dismissal of CFA claims on standing as being premature.  *See Francis E. Parker Mem'l Home, Inc.*, 945 F.

Supp. 2d at 556-57.  Thus, Plaintiff has sufficiently alleged an injury-in-fact for purposes of Article III standing.

Further, in *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, which Town Dock cites to claim that Plaintiff did not plead an injury-in-fact, (ECF No. 13 at 25), the court affirmed the District Court's dismissal for lack of standing.  903 F.3d 278 (3d Cir. 2018).  *In re Johnson & Johnson* is distinguishable.  There, the court found that plaintiff was aware of the health risks associated with the use of baby powder and therefore not likely to "suffer future economic injury," and accordingly lacked standing to seek injunctive relief.  *Id.* at 292.  Moreover, the case concerned California's consumer fraud claims and not the CFA, and Plaintiff here seeks injunctive relief, as well as damages.  (Compl. at 23-24).  Therefore, whether Plaintiff has standing to obtain injunctive relief is non-dispositive because injunctive relief, unlike monetary damages, which seeks "prospective relief[,]" requires that the plaintiff "show that he is likely to suffer future injury from the defendant's conduct."  *McNair v. Synapse Group. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (citation and internal quotations omitted). Accordingly, *Hall v. Welch Foods, Inc.* 2019 U.S. Dist. LEXIS 126803 (D.N.J. July 9, 2019) and *Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004) are inapposite to this matter.

The Court also finds *Bratton v. Hershey Co.*, No. 16-4322, 2018 U.S. Dist. LEXIS 26031 (W.D. Mo. Feb. 16, 2018) unpersuasive because it concerned a motion for summary judgment, did not turn on standing, and involved a Missouri state statute that has a causation element but is otherwise dissimilar to the CFA.  Indeed, the Missouri Merchandising Practices Act requires that plaintiff allege elements that do not mirror that of a CFA claim.  *See Id.* at *5; *Francis E. Parker Mem'l Home, Inc.*, 945 F. Supp. 2d at 558 (citation omitted).

Performance Food contends that "there can be no nexus" between the "allegedly-deceptive conduct and Plaintiff's alleged loss because Plaintiff presumably continued to make those purchases for *other* reasons." (ECF No. 26 at 14) (internal quotations omitted). Such argument is unavailing.

As the court in *Weichsel* noted, traceability is established even if "the conduct in question might not have been a proximate cause of the harm, due to intervening events." *Id.* at 111 (citation and internal quotations omitted). The court held that the plaintiff satisfied the traceability element despite the assertion that plaintiff "could have prevented" the alleged harm by cancelling his credit cards after receiving a "renewal notice" or in receiving his "billing statement" reflecting the fees at issue. *Id.* at 112 (citation omitted). And that it is "immaterial to the traceability requirement" that the plaintiff was noticed in a credit card statement that he "could avoid the additional charge by notifying [defendant] that he" wanted to close his account. *Ibid.* (citation omitted). Here, Plaintiff establishes the traceability requirement because as this element is noted as "but for causation," (*Weichsel*, 65 F.4th at 111 (citation and internal quotations omitted)), Plaintiff's allegation that Defendants' "manipulation" and "misrepresent[ion]" of the "net weight results in substantial ascertainable loss and [caused] damages to [] Plaintiff . . . ." (Compl. ¶¶ 3, 27).

The Court also agrees that Performance Food's arguments are "premature[.]" (ECF No. 22 at 28-29). On a motion to dismiss, the Court considers whether Plaintiff "alleged facts which, if true, would be sufficient to establish Article III standing." *Finkelman*, 810 F.3d at 192. "In the class action context," Plaintiff "initially need only establish that [he] individually ha[s] standing to bring [his] claims." *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 504 (D.N.J. 2009) (citation and internal quotations omitted). "Thus, to survive a motion to dismiss for lack of standing," Plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing

to sue." *Finkelman*, 810 F.3d at 194 (citation and internal quotations omitted).  Here, Plaintiff does not allege "[s]peculative or conjectural assertions" that "are not sufficient" for standing (*see Id.* at 194 (citation omitted)), but specific allegations that suggest that traceability is established.

Plaintiff has demonstrated that a "favorable decision" by this Court would redress the alleged harm.  *Id.* at 192 (citation and internal quotations omitted).  Indeed, it is "likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision" based on the allegations in the Complaint.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation and internal quotations omitted).  Accordingly, the Court finds that Plaintiff has established Article III standing to proceed with its claims.

Performance Food and Town Dock proceed to argue that there is no standing because the Complaint is barred by the statutes of limitations.  In support, the parties rely on sister cases that are unpersuasive and non-binding.  In *Tomek v. Apple Inc.*, the Ninth Circuit Court of Appeals affirmed the district court's dismissal of California's Unfair Competition law (the "UCL") in part for failure to state a claim.  636 F.App'x 712 (9th Cir. 2016).  Performance Food specifically cites the following passage: "Plaintiffs who can truthfully allege they were deceived by a company's representations into spending money to purchase a product, and would not have purchased it otherwise, . . . have suffered an economic injury sufficient to confer standing under" the UCL and Article III.  *Id.* at 713 (citations and internal quotations and brackets omitted).  This does not apply because this case does not involve UCL claims, and the court's reasoning has not been adopted by the Third Circuit.  Moreover, the Ninth Circuit Court of Appeals noted that the UCL's "statutory standing is more restrictive than Article III standing because the injury must be economic . . . ."  *Id.* at 713 (citation and internal quotations omitted).  Thus, the Court will not rely on the case.

Equally unpersuasive is *White v. Just Born, Inc.*, No. 17-4025, 2018 WL 3748405 (W.D. Mo. Aug. 7, 2018.  That case concerned a motion for class certification, which is not presently before the Court.  The court's analysis similarly was not whether the plaintiff plausibly alleged standing, but whether certification should be granted to a class "consisting of individuals who likely do not have standing . . . ."  *Id.* at 7.  Relatedly, Plaintiff's proposition that "[i]f a plaintiff knew about the at-issue practice but still bought the product, courts have held that the plaintiff lacks Article III and statutory standing" (*see* ECF No. 10-1 at 36 (internal quotations omitted)), refers to alleged violations of the Missouri Merchandising Practices Act and unjust enrichment (*see White*, 2018 WL 3748405, at *5), neither of which are at issue here.

Finally, the Court finds *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329 (S.D. Fla. 2007) unpersuasive.  There, the court held that plaintiffs failed to state a claim for negligent misrepresentation and unjust enrichment because they "continue[d] to purchase Lipitor even though they [were] purportedly now aware of the truth regarding its alleged lack of coronary benefits."  *Id.* at 1335.[9]  The court, however, did not attribute this finding to a lack of standing.

Without persuasive authority to the contrary, the Court finds that Plaintiff has standing to proceed with its claims.  The Court proceeds to consider whether the Complaint is barred by the statute of limitations.

### 2.    The Statute of Limitations Precludes Plaintiff's Claims Except the CFA Claim Against Performance Food Only

The statute of limitations "can serve as the basis for dismissal under Fed.R.Civ.P. 12(b)(6), as long as the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  *McPherson v. United States*, 392 F.App'x 938, 943 (3d Cir. 2010) (citation and internal quotations omitted).  If it is "apparent on the face of the

---

[9] Performance Food incorrectly cites to 1336.

complaint," a district court may dismiss a complaint because of a statute of limitations affirmative defense. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citations and internal quotations omitted).  However, if the time-bar "is not apparent on the face of the [C]omplaint, then it may not afford the basis for a dismissal . . . under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (citation and internal quotations omitted).  Indeed, the "law of this Circuit . . . permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.*, 313 F.3d at 135 (citation and internal quotations omitted).

Performance Food argues that the statute of limitations for Plaintiff's remaining claims "are six years or less." (ECF No. 10-1 at 37).  Thus, because Plaintiff became aware of the alleged difference in net weight when the Office of Weights and Measures conducted a Commodity Audit on July 16, 2014 (the "Audit"), the Complaint is time-barred.  (ECF No. 10-1 at 36-37; ECF No. 13 at 26).  The Court agrees in part.

At the start, Plaintiff does not dispute that its claims for breach of contract (Count One), breach of duty of good faith and fair dealing (Count Two),[10] breach of warranty (Counts Three

---

[10] The Court dismisses the claim.  The "party claiming a breach of the covenant must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties."  *Bonnieview Homeowners Ass'n v. Woodmont Builders, LLC*, 655 F. Supp. 2d 473, 510 (D.N.J. 2009) (citation and internal quotations omitted).  In other words, Plaintiff must allege that Defendants acted in "bad faith" and "with ill motives and without any legitimate purpose" to state a claim. *Id.* at 511 (citations and internal quotations omitted).  Here, Plaintiff alleges that Defendants "breached their duty of good faith and fair dealing" by selling frozen calamari "knowing that the amount of product represented on their packaging was less than the amount actually sold to" Plaintiff.  (Compl. ¶ 46).  Further, that Defendants' duty of good faith and fair dealing "precluded" and "prohibited" Defendants "from acting in any manner that would destroy or injure the reasonable expectations of" Plaintiff.  (*Id.* ¶¶ 47-48).  Because the Amended Complaint lacks allegations that Defendants acted in "bad faith[,]" had "ill motives[,]" and/or did not have a "legitimate purpose" in so doing, Count Two is dismissed.  Plaintiff also neither opposes dismissal nor disputes that the claim is insufficiently pled. (*See* ECF No. 10-1 at 25-27; ECF No. 13 at 15-17; ECF No. 17-18; ECF Nos. 22 at 11 n.1; ECF No. 23 at 9 n.1; ECF No. 24 at 10 n.1).  Further, the Court finds that leave to amend would be futile.  *See Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021).  Therefore, the claim is dismissed *with prejudice*.

and Four), and Truth-in-Consumer Act (Count Eight)[11] are subject to a four-year statute of limitations.  N.J.S.A. 12A:2-725(1).  Plaintiff similarly does not dispute that its CFA claim (Count Seven) is subject to a six-year statute of limitations.  *Naprstek v. Ditech Fin. LLC*, No. 18-11442, 2022 WL 2816898, at *4 (D.N.J. July 19, 2022).

It is clear from the face of the Complaint that Plaintiff's claims are time barred.  While the events that gave rise to this action occurred no later than July 16, 2014 (*see* Compl. ¶¶ 20-21), the Complaint was not filed until January 4, 2021.  As a result, "unless some basis for tolling applies," Plaintiff's claims are "untimely."  *Jonas v. Gold*, 627 F.App'x 134, 139 (3d Cir. 2015).

Plaintiff argues in two footnotes that the statute of limitations should be tolled—as to the CFA claim only—because the Audit "is evidence of a continuing course of conduct and continuing violation of the CFA that began, at least in 2014, and was reconfirmed by Weights & Measures in 2017."  (ECF No. 22 at 27 n.5; ECF No. 24 at 24 n.4).  Because Plaintiff does not dispute that Counts One, Three, Four, and Eight are time-barred, and the face of the Complaint makes clear that the claims are so barred, the Court dismisses those claims *with prejudice* as to all Defendants.[12]  Similarly, the Court finds that the continuing violations doctrine (the "Doctrine") does not toll the statute of limitations of Plaintiff's CFA claim as to Town Dock and Ruggiero, and dismisses the CFA claim *with prejudice* as to those parties only.

The Doctrine is an "equitable exception to the timely filing requirement."  *Cowell v. Palmer Tp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citation and internal quotations omitted).  If appropriate, "the court will grant relief for the earlier related acts that would otherwise be time barred."  *Id.* at 292 (citation and internal quotations omitted).  To apply, courts "consider at least

---

[11] Plaintiff also did not oppose dismissal of the claims for breach of contract, breach of the duty of good faith and fair dealing, and Truth-in-Consumer Act.  (ECF Nos. 22 at 11 n.1; ECF No. 23 at 9 n.1; ECF No. 24 at 10 n.1).

[12] Because the claims are time-barred, the Court finds that like Count Two, leave to amend would be futile.

three factors: (1) subject matter—whether the violations constitute the same type of [misconduct], tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the acts had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Id.* at 292 (citation omitted).

The Court finds that the application of the Doctrine is not appropriate as to Plaintiff's CFA claim against Performance Food. *See Gould v. Borough*, 615 F.App'x 112, 116 (3d Cir. 2015) (Doctrine "creates a narrow and equitable exception to the timely filing requirement.") (citations and internal quotations omitted). First, Plaintiff does not allege that Defendants continued to cause it injury, or that the alleged harm was more than an isolated event. Instead, Plaintiff alleges that it filed a complaint with the Office of Weights and Measures in July 2014, "based upon" its concern that it was not receiving the net weight represented. (Compl. ¶ 20). The Audit was conducted on July 16, 2014, which allegedly confirmed Plaintiff's suspicions. (*Id.* ¶¶ 21-22). Plaintiff took no further action until 2017, when it filed a second complaint with the Ocean County, New Jersey's Department of Consumer Affairs ("Ocean County") that ultimately was referred to the Office of Weights and Measures. (*Id.* ¶¶ 23-24).

Plaintiff does not allege that Defendants continued their purported unlawful conduct after July 16, 2014. To be sure, while Plaintiff argues that the findings in the Audit were "reconfirmed by Weights & Measures in 2017" to demonstrate that the statute of limitations should be tolled, the face of the Complaint shows that between July 16, 2014, and 2017, no allegations were proffered to suggest that the difference in net-weight was more than an isolated event. If Plaintiff was concerned of the net weight issue, it could have filed this action during that time. Indeed,

since Title 51 allowed the Office of Weights and Measures to commence an enforcement action against Defendants, if it so chose, Plaintiff could have sought recourse through this litigation after filing its complaint in July 2014.

Plaintiff also had the opportunity to file this action after the Audit's findings were made, which Plaintiff relies on now in the Complaint.  (Compl. ¶¶ 21-22).  Such allegations advocate denying application of the Doctrine.  *See Cowell*, 263 F.3d at 295 (Courts "must consider the policy rationale behind the statute of limitations.  That is, the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims.") (citation omitted).  Certainly, if the clock started on July 16, 2014, Plaintiff had until July 16, 2020, to file suit.  Because Plaintiff does not allege that Town Dock's and Ruggiero's misconduct continued after July 16, 2014, the Doctrine does not apply.  *See Bennett v. Susquehanna Cnty. Child. & Youth Servs.*, 592 F.App'x 81, 85 (3d Cir. 2014) ("[C]ontinuing violation is occasioned by continual unlawful acts, not continual ill effects from the original violation.") (citation and internal quotations omitted).

Plaintiff submits a 2017 audit by the Office of Weights and Measures (*see* Ex. A to Stephen T. Sullivan, Jr.'s May 17, 2021 Declaration (ECF No. 23-1)) to the Court for consideration.  (ECF No. 22 at 14 n. 2).  The Court may consider the document (*see* Compl. ¶ 23-25[13]) but finds that it is of no consequence.  The "Consumer Description" section of the Complaint Form states that the "Complaint started from Ocean County Weights and Measures and passed on to Gloucester County Weights and Measures[,]" who in turn "passed" Plaintiff's 2017 complaint "to the state office for assistance."  (ECF No. 23-1 at 5).  For purposes of the affirmative defense of statute of limitations, this document confirms that the investigation was not the result of Defendants' continued

---

[13] Because Plaintiff referred to the Weights and Measures' investigation, the Court may consider Ex. A.  (ECF No. 23-1).  *See Doe*, 961 F.3d at 208 (citation omitted).

violations after July 2014.  Even if Defendant's alleged misrepresentation injured Plaintiff up to the time Plaintiff filed the 2014 complaint, and the Audit confirmed Plaintiff's suspicions, the Complaint does not allege that Defendants engaged in "continual unlawful act[s]" that flowed from the 2014 complaint.

The Doctrine similarly does not apply because "an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  *Ozoroski v. Maue*, 460 F.App'x 94, 97 (3d Cir. 2012) (citation and internal quotations omitted).  The 2017 complaint is not based on any new acts or information provided by Plaintiff between 2014 and 2017, but rather on the Audit that followed Plaintiff's 2014 complaint.  Accordingly, the Court finds that Plaintiff's CFA claim is time-barred, and the Doctrine does not toll the statute of limitations as to Town Dock and Ruggiero.  The same is not true of Plaintiff's CFA claim against Performance Food, however.

Performance Food voluntarily attached a June 1, 2017, invoice identified by Invoice No. 4386938 (ECF No. 10-3) Ex. 1 to Peter J. Fazio's April 8, 2021, Declaration (ECF No. 10-2) (the "Invoice")) that shows that as of at least June 1, 2017, Performance Food continued selling products to Plaintiff.[14]  In the Invoice, Performance Food underlined Item No. 232030—"Squid Calamari T&T 5-8"—that was purportedly sold to Plaintiff.  (*See* Invoice).  Thus, the Invoice suggests that Performance Food continued selling calamari to Plaintiff after July 16, 2014.

At this time, the Court does not make a finding whether the squid calamari reflected in the Invoice is the same frozen calamari at issue here.  For purposes of tolling, however, the Court finds that the six-year CFA statute of limitations is tolled as to Performance Food because Plaintiff's claims may be based on the same frozen calamari noted in the Invoice.  *See Robinson*, 313 F.3d at 135.  Indeed, the Invoice may demonstrate additional unlawful acts on the part of Performance

---

[14] The Court may consider the Invoice.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

Food that purportedly support Plaintiff's claims.  *See re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 452 (D.N.J. 2018) (applying Doctrine when last alleged act occurred within the statute of limitations).  Therefore, the Court finds that the statute of limitations began running on June 1, 2017, and not July 16, 2014.  Thus, the Court denies Performance Food's motion to dismiss as to the CFA claim only.

### E.      Plaintiff States a Plausible Consumer Fraud Act Claim Against Performance Food

The CFA "targets unlawful sales and advertising practices designed to induce customers to purchase merchandise or real estate."  *Sun Chem. Corp. v. Fike Corp.*, 981 F.3d 231, 236 (3d Cir. 2020) (citation and internal quotations omitted).  To that end, the CFA prohibits:

> The act, use or employment by any person of any commercial practice that is unconscionable or . . . misrepresentation, or the knowing concealment, . . . or omission of any material fact with intent that others rely upon . . . in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J.S.A. 56:8-2.

To state a claim, Plaintiff must allege: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss."  *Francis E. Parker Mem'l Home, Inc.*, 945 F. Supp. 2d at 558 (citation omitted).  Unlawful conduct means "affirmative acts and knowing omissions," as well as "violations of regulations promulgated under" the CFA.  *Id.* at 558 (citations omitted).

In the Complaint, Plaintiff alleges that Performance Food's "sale of amounts of frozen calamari that were less than represented on their packaging were" in part "unconscionable commercial practices" and "constituted the knowing, concealment, suppression or omission of material fact with the intent" that Plaintiff would rely on.  (Compl. ¶ 76).  Plaintiff also alleges that

such "unconscionable commercial practices" violated the CFA and "related consumer protection regulations." (*Id.* ¶ 77). Further, that Performance Food's "unconscionable, deceptive, false and misleading misconduct . . . is casually related to" Plaintiff's "ascertainable losses." (*Id.* ¶ 80). These allegations are sufficient to state a claim. *See Francis E. Parker Mem'l Home, Inc.*, 945 F. Supp. 2d at 558 ("[T]o satisfy the specificity requirement of Fed.R.Civ.P. 9(b) the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain and ascertainable loss.") (citations and internal quotations omitted).

The Third Circuit Court of Appeals has stated that to meet the heighted pleading requirements for such claims, Plaintiff must "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged and plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (citation and internal quotations and brackets omitted).

Here, Plaintiff has sufficiently alleged that: (i) it is a consumer because it does "not wholesale or resell the calamari in its original packaging and frozen form"; (ii) calamari is "merchandise" under the CFA; and (iii) Plaintiff "suffered a cognizable ascertainable loss[] [b]ased" on Performance Food's "manipulation and misrepresentation of the net weight of frozen calamari," causing Plaintiff to "receive[] less than what was promised." (ECF No. 22 at 29-30). *See Alpizar-Fallas*, 908 F.3d at 915 (CFA "may be enforced by individual consumers . . . .") (citations omitted); *see also* N.J.S.A. 56:8-1(c) ("merchandise" means "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]").

In citing *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557 (D.N.J. 2002), Performance Food contends that the CFA "does not apply to companies that purchase wholesale goods for resale to the public." (ECF No. 10-1 at 17). This argument fails for several reasons. First, the court there noted that a corporation and a business entity are "person[s]" under the CFA. *Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 560-61; *see also* N.J.S.A. 56:8-1(d) (defining "person"). Second, the court stated that it is the "character of the transaction, not the identity of the purchaser, [that] determines whether the CFA is applicable." *Bracco Diagnostics, Inc.*, 226 F. Supp. 2d at 560 (citation omitted). Indeed, while Performance Food describes Plaintiff as a wholesaler, Plaintiff disputes this representation. (ECF No. 22 at 10). Thus, based on the face of the Complaint, Plaintiff may be found to be a "person" under the statute.

Next, Performance Food argues that Plaintiff is not a "consumer" because "it is not diminishing or destroying the utility of the frozen calamari." (ECF No. 10-1 at 18). Moreover, that Plaintiff's patrons are the real "consumer[s]" because they ultimately eat the frozen calamari purchased by Plaintiff. (ECF No. 26 at 16). This District has held that a "consumer" is a business entity and those "who use[] (economic) goods," such that they are deemed to "diminish[] or destroy[]" the utility of the product. *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 543-44 (D.N.J. 2013) (citations and internal quotations omitted). More pertinent here, a "purchaser of" merchandise "for a business use" is also a "consumer" under the CFA. *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 509 (D.N.J. 1999); *see also Prescription Counter v. AmerisourceBergen Corp.*, No. 4-5802, 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007) (noting the CFA "afford[s] protection to corporate and commercial entities who purchase goods and services for use in their business operations.") (citations omitted).

Performance Food cites *Diamond Life Lighting MFG (HK) Ltd. v. Picasso Lighting, Inc.*, in which the court held that defendants were not consumers under the CFA in part because defendants "sought to preserve all value possible in the lighting fixtures so that Defendants could ultimately" sell the fixtures "on a wholesale level and to the general public" (*see* No. 10-161, 2010 WL 5186168, at *6 (D.N.J. Dec. 14, 2010). Distinguishably, Plaintiff here may ultimately be found to be a consumer because as Plaintiff notes, it "does not wholesale or resell the calamari in its original packaging and frozen form" but "uses the frozen calamari as an ingredient in its dishes." (ECF No. 22 at 10).  Performance Food's reliance on *O'Loughlin v. Nat'l Cmty. Bank*, 338 N.J. Super. 592, 605 (App. Div. 2001) is also unpersuasive because the court there considered the "subsequent performance provision of" the CFA, which is not at issue here.

Finally, the Court rejects Performance Food's remaining arguments.  First, that Plaintiff did not state a plausible CFA claim because it did not allege that Performance Food's "statement that it sold 40 pounds of frozen calamari to Plaintiff was intended to be conveyed to consumers wishing to order a calamari-based dish for a single meal."  (ECF No. 10-1 at 9).  Second, that Plaintiff "must allege substantial aggravating circumstances" on Performance Food's "part" to state a claim.  (ECF No. 10-1 at 10).  Neither argument alters the Court's finding because whether Plaintiff is a "remote supplier" presents a fact issue (*see* ECF No. 10-1 at 9), and the "aggravating circumstances" analysis concerns a breach of express warranty claim. (*Id.* at 19).  Accordingly, the Court finds that Plaintiff pled a plausible CFA claim.

IV.     **CONCLUSION**

For the reasons set forth above, Performance Food's motion to dismiss (ECF No. 10) is **GRANTED in part** and **DENIED in part**, Town Dock's motion to dismiss (ECF Nos. 12-13) is **GRANTED**, and Ruggiero's motion to dismiss (ECF No. 17) is **GRANTED**.

An appropriate Order accompanies this Opinion.

DATED: <u>12/14/2023</u>

<u>s/ Julien Xavier Neals</u>
**JULIEN XAVIER NEALS**
United States District Judge
