UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CALABRIA RISTORANTE, INC., individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br>v.<br><br>RUGGIERO SEAFOOD, INC.; PERFORMANCE FOOD GROUP a.k.a. PERFORMANCE FOOD SERVICE; ROMA FOOD ENTERPRISES, INC.; NGC, INC. d/b/a THE TOWN DOCK; and JOHN DOES (1-10) and XYZ CORPORATIONS (1-10) (Multiple, Alternative, Fictitious Entities),<br><br>Defendants.<br><br>PERFORMANCE FOOD GROUP, INC.,<br><br>Third-Party Plaintiff,<br>v.<br><br>RUGGIERO SEAFOOD, INC. and NGC, INC. d/b/a THE TOWN DOCK<br><br>Third-Party Defendants. | Civil Action No. 21-3712 (JXN) (AME)<br><br>OPINION |

**NEALS**, District Judge:

This matter comes before the Court on Third-Party Defendant Ruggiero Seafood, Inc.'s ("Ruggiero") motion to dismiss Third-Party Plaintiff Performance Food Group, Inc.'s ("Performance Food") Third-Party Complaint ("TPC") (ECF No. 57) and Third-Party Defendant NGC Inc. d/b/a The Town Dock's ("Town Dock") crossclaims (ECF No. 73) pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 75). Jurisdiction is proper pursuant to 28 U.S.C. §§

28 U.S.C. §§ 1331-1332, 1367. Venue is proper pursuant to 28 U.S.C. § 1441(a). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Ruggiero's motion to dismiss is **GRANTED IN PART**.

## I. BACKGROUND AND PROCEDURAL HISTORY

Given the parties' familiarity with the facts of this case, the Court will only provide those facts necessary for the present motion.[1] This class action[2] arises from Plaintiff Calabria Ristorante, Inc.'s ("Calabria") allegations that the net weight of frozen calamari it purchased from Roma Food Enterprises, Inc., and Performance Food was routinely below the net weight stated on the packaging. (*See generally* Complaint ("Compl."), ECF No. 1-2 ¶ 15; TPC ¶ 1).

Subsequently, Performance Food, Ruggiero, and Town Dock filed motions to dismiss Calabria's Complaint. (ECF Nos. 10, 12, 17).

On December 14, 2023, the Court issued an Opinion and Order. (ECF Nos. 34, 35). The Court granted in part Performance Food's motion, dismissing with prejudice all counts except Count Seven against Performance Food; the Court granted Ruggiero and Town Dock's motions and dismissed Calabria's Complaint in its entirety with prejudice as to both Defendants. (ECF No. 34 at 2).

On September 18, 2024, Performance Food filed the Third-Party Complaint against Ruggiero and Town Dock alleging that Ruggiero and Town Dock are liable to Calabria, and thus, they are both liable to Performance Food Group for contractual and common law indemnification

---

[1] For a fuller recitation of the facts, please review the Court's December 14, 2023 Opinion. (ECF No. 34).
[2] As noted in the Court's prior opinion, "[n]otwithstanding the reference to 'similarly situated customers,' Plaintiff is the sole named plaintiff in this action." (ECF No. 34 at 2 n.2).

2

and contribution. (*See generally* TPC). [3] Performance Food denies fault in the Third-Party Complaint. (TPC ¶ 8).

The Third-Party Complaint alleges that Ruggiero and Town Dock both entered into a "Foodservice Products Supplier Processing and Packaging Agreement" (the "Agreements") with Performance Food and that both Agreements contain identical indemnification provisions. (*Id.* at ¶¶ 9-12).[4] According to the Third-Party Complaint, the Agreements state that the "[p]acker will defend Performance [Food Group] . . . against any allegations asserted or fines, penalties, or Damages, sought in any claim by a third party arising out of . . . [d]efect involving the packaging" of a product." (*Id.* at ¶ 13). Additionally, the Agreements state:

> Each party will indemnify and hold the other party, its affiliates and subsidiaries . . . harmless from and against any damages, liabilities, losses, costs, or expenses (including reasonable attorney's fees) ("Damages") incurred by any indemnified party, resulting from a claim, action, lawsuit, or proceeding (a "Claim") to the extent cause by the indemnifying party's . . . violation of any federal or state laws, [or] regulations, [or] failure to comply with any Specifications or provisions of th[e] [Supplier Processing and Packaging] Agreement[s] [or] gross negligence or willful misconduct.

(*Id.* at ¶ 15).[5]

On December 10, 2024, Town Dock filed its Answer and asserted crossclaims for indemnification and contribution against Ruggiero. (ECF No. 73).

On December 13, 2024, Ruggiero filed the instant motion to dismiss the Third-Party Complaint and Town Dock's crossclaims. ("Ruggiero Br.") (ECF No. 75). On January 7, 2025, Performance Food opposed. ("TPP Br.") (ECF No. 78). On that same date, Town Dock opposed

---

[3] The following factual allegations are taken from the Third-Party Complaint, which are accepted as true. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).
[4] The Court notes Performance Food did not attach these Agreements to their Third-Party Complaint.
[5] The Third-Party Complaint also alleges that Performance Food entered into a "Confidential Acceptance of Tender" Agreement ("Tender Agreement") with both Ruggiero and Town Dock in 2023, which "restates the indemnification obligations of the Third-Party Defendants." (TPC ¶ 18).

3

Ruggiero's motion to dismiss Town Dock's crossclaims. ("TD Br.") (ECF No. 79). On January 13, 2025, Ruggiero replied. (ECF No. 80). This matter is now ripe for consideration.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 8 requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is not appropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a complaint is sufficient, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

## III. DISCUSSION

"Indemnification is available under New Jersey law in two situations: when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification." *Fireman's Fund Ins. Co. v. 360 Steel Erectors, Inc.*,

4

No. 16-2782, 2018 WL 1069417, at *4 (D.N.J. Feb. 26, 2018) (citation modified); *see also Katz v. Holzberg*, No. 13-1726, 2013 WL 5946502, at *2 (D.N.J. Nov. 4, 2013). "In either case a party is entitled to indemnification only if he or she is without fault and his or her liability is purely constructive, secondary or vicarious." *Fireman's Fund*, 2018 WL 1069417, at *4.

For contractual indemnification, the determination of whether a contract provides for indemnification is relatively straightforward. *See In re Tarragon Corp.*, No. 09-10555, 2010 WL 3928496, at *3 (Bankr. D.N.J. Oct. 1, 2010). Under governing New Jersey contract law, a "contract of indemnity is to be interpreted in accordance with the rules governing the construction of contracts generally." *Andre Constr. Assoc., Inc. v. Catel Inc.*, 681 A.2d 121, 123 (N.J. Super. L. 1996) (quoting *Cozzi v. Owens Corning Fiber Glass Corp.*, 164 A.2d 69, 71 (N.J. Super. A.D. 1960); *see also id.* (citing *Levison v. Weintraub*, 521 A.2d 909, 910 (N.J. Super. A.D. 1987) ("Where the obligations of the parties are clear and unambiguously set forth in the indemnity agreement, the court should summarily enforce such indemnification provisions."). "With regard to express contractual language, New Jersey law directs courts to construe a contractual indemnity provision in the same way it construes any other part of a contract—with the goal of determining the parties' intent." *Lukacs v. Purvi Design LLC*, No. 21-19599, 2023 WL 6439877, at *4 (D.N.J. Oct. 2, 2023) (citing *Kieffer v. Best Buy*, 14 A.3d 737, 743 (2011)). "Thus, "[i]f the meaning of an indemnity provision is ambiguous, the provision is 'strictly construed against the indemnitee.'" *Lukacs*, 2023 WL 6439877, at *4 (quoting *Kieffer*, 14 A.3d at 743).

For implied indemnification,[6] "[i]t is the existence of a special legal relationship sufficient to impose certain duties and a subsequent breach of those duties that permits an implied

---

[6] Common law indemnification occurs when "there is no contract or privity between the parties." *R.D.D. Associates, LLC v. Windsor Benefit Consultants, Inc.*, No. 03-2617, 2005 WL 8176022, at *7 (D.N.J. 2005) (citing *New Milford Bd. of Education v. Juliano*, 530 A.2d 43, 44 (N.J. Super. App. Div. 1987). "Equitable indemnity is 'an equitable doctrine that allows a court to shift the cost from one tortfeasor to another. The right to common-law indemnity arises

5

indemnification." *Id.* (citing *Ruvolo v. U.S. Steel Corp.*, 336 A.2d 508, 511 (N.J. Super. Ct. Law Div. 1975)); *see also Western Slope Telecommunications Consultants, Inc. v. Telephone & Data Communications, Inc.*, No. 89-3907, 1990 WL 86124, at *3 (D.N.J. 1990) ("In order to be entitled to implied indemnification a party must show the existence of a special legal relationship with the other party.") (citing *Miller v. Hall Bldg. Corp.*, 509 A.2d 316, 318 (N.J. Super. Law Div. 1985)). "[I]mplied indemnification by way of a special relationship is a 'narrow doctrine' that is not frequently stretched beyond the examples of principal-agent, employer-employee, lessor-lessee, and bailor-bailee." *Katz*, 2013 WL 5946502, at *3 (citation modified). A "longstanding business relationship" is not enough to show that a special legal relationship exists for indemnification purposes. *Id.* at *3 n.4. Examples of these "special legal relationships" include "principal-agent, employer-employee, lessor-lessee, and bailor-bailee." *SGS U.S. Testing Co. v. Takata Corp.*, No. 09-6007, 2012 WL 3018262, at *4 (D.N.J. July 24, 2012), *aff'd*, 547 F. App'x 147 (3d Cir. 2013) (citation modified); *see also Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 510 A.2d 1152, 1158 (N.J. 1986) (same) (citation modified); *Dickinson v. Magargal*, No. 91-4533, 1993 WL 391328, at *3 (D.N.J. Sept. 28, 1993) (acknowledging that such a relationship must be of such a character to warrant an imposition of certain duties, the breach of which "permits an implied indemnification").

### A. Contractual Indemnification

At this juncture, Performance Food adequately pleads a contractual indemnification claim. The Third-Party Complaint alleges that the Agreements state that the "[p]acker will defend Performance [Food Group] . . . against any allegations asserted or fines, penalties, or Damages, sought in any claim by a third party arising out of . . . [d]efect involving the packaging" of a

---

"without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.'" *Capitol First Corp. v. Todd*, No. 04-6439, 2006 WL 3827329, at *12 (D.N.J. 2006) (citation modified).

6

product." (TPC ¶ 13). Performance Food's claim turns on whether the discrepancies in net weight of calamari constitutes a package defect. Logically, the net weight of a package necessarily includes the packaging of a product. Despite Ruggiero's contention that "Performance [Food] cannot demonstrate any defects in the packaging of products provided by Ruggiero in this action as Calabria did not even allege that it purchased any calamari from Ruggiero or that any of Ruggiero's products were tested in the Attorney General's investigations[,]" (Ruggiero Br. at 15), Performance Food alleges that Ruggiero (and Town Dock) "supplied products to Performance Food[,]" which this Court must accept as true at this stage. (TPC ¶ 1). *Phillips*, 515 F.3d at 231. However, Performance Food does not specify the relevant time period in which they allege Ruggiero supplied calamari to Performance Food. (*See generally* TPC).

Additionally, the Court is unable to properly determine the intent of the parties in drafting the indemnification provision because without the entire Supplier Processing and Packing Agreement, the Court cannot construe the indemnification provision in the context of the entire Agreement.[7] Moreover, determining whether a packaging defect encompasses a net weight discrepancy, requires discovery, since none of the parties provide factual allegations, affidavits, or evidence to enlighten the Court on the typical practices of the specifics of packaging in this particular industry. The Court is mindful that "[i]f the meaning of an indemnity provision is ambiguous, the provision is 'strictly construed against the indemnitee.'" *Lukacs*, 2023 WL 6439877, at *4 (quoting *Kieffer*, 14 A.3d at 743). However, at this stage, the Court is unable to

---

[7] While the Court accepts the existence of these Agreements, the Court cannot evaluate the specific contractual provisions. The Agreements are not attached to the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (a court may consider a document that is relied upon in the complaint or is integral to the complaint in its analysis of a motion to dismiss without converting the motion to one for summary judgment). This exception to the general rule exists "so that [a] plaintiff cannot maintain a claim 'by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement [did not support the claim].'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n. 5 (3d Cir. 2004) ((quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426)).

determine whether the indemnification provision is ambiguous given its lack of context. Accordingly, at this juncture, Performance Food's contractual indemnification claim survives. Ruggiero can renew its motion if discovery demonstrates, for example, that Ruggiero did not supply the calamari in question, additional details from the New Jersey Attorney General's investigation show Ruggiero's calamari was not at issue, or if industry standards and common practices delineate packaging from net weight, which would render the meaning of the indemnification provision of the Supplier Processing and Packaging Agreement to not implicate the allegations related to the net weight discrepancy of calamari. Until discovery, Ruggiero's motion will have to remain on ice.[8]

### B. Implied Indemnification

Performance Food has not sufficiently pled the requisite "special legal relationship" with Ruggiero for a claim of implied indemnification. The Third-Party Complaint is devoid of any allegations demonstrating that either Third-Party Defendant had one of the "special legal relationship[s]" delineated by case law. (*See generally* TPC). *See SGS U.S. Testing Co., Inc.*, 2012 WL 3018262, at *5 ("The [c]ourt is mindful, however, that implied indemnification by way of a special relationship is a '*narrow doctrine*' that is not frequently stretched beyond the examples of principal-agent, employer-employee, lessor-lessee, and bailor-bailee.") (citation modified) (emphasis added).

---

[8] However, Town Dock's crossclaim against Ruggiero fails to state a claim because Town Dock does not allege the Tender Agreement, or any other contract provides that Ruggiero agreed to indemnify Town Dock. While crossclaims for indemnification and contribution "do not need to contain 'detailed factual allegations,' they must set forth sufficient facts to raise [the claimant's] 'right to relief above the speculative level.'" *Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, No. 07-3827, 2010 WL 1379751, at *5 (D.N.J. Mar. 30, 2010) (finding plaintiff's proposed crossclaims insufficient because plaintiff merely recited the elements of indemnification and contribution and did not plead any facts regarding why it is entitled to relief). Additionally, Town Dock does not adequately allege a basis of Ruggiero's partial liability related to Calabria's NJCFA claim. *See Davidson v. Cornerstone Bank*, No. 10-2825, 2011 WL 677321, at *5 (D.N.J. Feb. 16, 2011) (dismissing crossclaim seeking contribution and indemnification where it "d[id] not include any averments detailing how or why [d]efendants are jointly liable"). Accordingly, Town Dock's crossclaim against Ruggiero for contractual indemnification is dismissed without prejudice.

8

Performance Food argues the contractual relationship with Ruggiero is "sufficient to support a finding that a 'special legal relationship' exists between the parties." (TPP Br. at 7 (citing *Ruvolo*, 354 A.2d at 688; *see also* TD Br. at 8)). Performance Food and Town Dock also cite *Vititoe v. Bridgestone Americas Tire Ops., Inc.*, 2018 WL 5724084, at *7 (D.S.C. Jan. 17, 2018), for the proposition that a court denied summary judgment on an implied indemnification claim where the court found a contractual relationship constituted a special legal relationship under New Jersey law. (*Id.*). However, in *Ruvolo* the court examined a situation in which a manufacturer filed a third-party complaint against the employer of the plaintiff. The *Ruvolo* Court did not indicate such a finding would apply in other contexts. *Ruvolo*, 354 A.2d at 688. Moreover, in *Vititoe* the court acknowledged that "[t]raditionally, a vendor-vendee relationship does not create a special relationship" and only found that one existed because the third-party defendant "had an obligation to provide competent subcontractors." *Vititoe*, 2018 WL 5724084, at *8. Even if the Court were to find the alleged contractual relationship between Performance Food and Ruggiero created a legal relationship, Performance Food fails to specify the type of relationship. *See Lukacs*, 2023 WL 6439877, at *5 (finding defendants "adequately alleged a legal relationship, but it is unclear the sort of legal relationship being alleged (*i.e.*, employer and employee, vendor and vendee, etc.); *Ryan v. U.S.*, 233 F. Supp. 2d 668, 686 (D.N.J. 2002) ("A contract does not alone create a special relationship between the parties"); *Ramos*, 510 A.2d 1152, 1158-59 (finding no right to implied indemnification from contract); *but see Port Auth. of N.Y. and N.J. v. Honeywell Protective Servs.*, 535 A.2d 974, 978 (App. Div. 1987) (stating that "cogent argument" can be made that contract created special relationship). Thus, Performance Food does not state an implied indemnification claim.[9] *See Symbiont Sci. Eng'g & Constr., Inc. v. Ground Improvement Servs., Inc.*, 723 F. Supp.

---

[9] As such, the Court does not address Ruggiero's other arguments regarding Performance Food's implied indemnification claim. (Ruggiero Br. at 9-10).

9

3d 363, 385 (D.N.J. Mar. 14, 2024) (dismissing indemnification claim where plaintiffs did not "allege any special legal relationship, and the Court does not find that the relationship between the parties is analogous to the above-mentioned special categories."); *Rao v. Anderson Ludgate Consulting*, LLC, No. 15-3126, 2017 WL 684517, at *4 ("[A] defendant does not have a special legal relationship just because that defendant is responsible for preparing the company's accounting or *because the parties have a business relationship*.") (emphasis added); *Poltrock v. NJ Auto. Accounts Mgmt. Co.*, No. 08-1999, 2008 WL 5416396, at *9 (D.N.J. Dec. 22, 2008) (dismissing indemnification claim where "AAM fail[ed] to allege any special legal relationship, such as an agency relationship, that would confer a duty of indemnity on DCH"); *Ferriola v. Stanley Fastening Sys., L.P.*, No. 04-4043, 2007 WL 2261564, at *2 (D.N.J. Aug. 1, 2007) (finding that claim for indemnification failed where no contract or special legal relationship existed between a purchaser of a product and the manufacturer or seller of that product); *Dickinson*, 1993 WL 391328, at *3-4 (dismissing indemnification claim in part where no "special legal relationship" was pled).[10] Accordingly, Performance Food's implied indemnification claim against Ruggiero is dismissed without prejudice. Similarly, Town Dock's crossclaim for implied indemnification against Ruggiero is dismissed without prejudice for the same deficiency—failure to plead the requisite special legal relationship. *See, e.g., Symbiont*, 723 F. Supp. 3d at 385.

### C. Contribution

"Under the New Jersey Joint Tortfeasors Contribution Act ("NJJTCA"), a right to contribution arises when 'injury or damage is suffered by any person as a result of the wrongful

---

[10] "The New Jersey Supreme Court has, in at least one instance, found an implied right to identification despite the existence of a contract or special relationship." *Symbiont*, 723 F. Supp. 3d at 385 n. 17 (citing *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 159 A.2d 97, 110 (1960)). "That case, however, dealt with strict liability and one party who alleged they were free from fault . . . Courts have not applied *Adler* broadly; indeed, courts have rejected finding an implied indemnification claim where there are no 'allegations premised on absolute or strict liability.'" *Id.* (quoting *SGS U.S. Testing Co., Inc.*, 2012 WL 3018262, at *6)).

10

act, neglect or default of joint tortfeasors.'" *Estevez v. Kingstone Ins. Co.*, No. 22-5391, 2024 WL 4250556, at *4 (D.N.J. Aug. 8, 2024) (quoting N.J.S.A. 2A:53A-3). "In such cases, joint tortfeasors may recover contribution from another tortfeasor for any excess paid in satisfaction of a judgment 'over his pro rata share.'" *Id.* (quoting N.J.S.A. 2A:53A-3). "The statute defines joint tortfeasors to mean 'two or more persons jointly or severally liable in tort for the same injury to person or property.'" *Id.* (quoting N.J.S.A 2A:53A-1). "Thus, the third-party plaintiff and third-party defendant 'must either act together in committing the wrong, or their acts, if independent of each other, must unite in a single injury.'" *Id.* (quoting *Erkins v. Case Power & Equip. Co.*, 164 F.R.D. 31, 33 (D.N.J. 1995)), *superseded on other grounds by statute*, N.J.S.A. 2A:15-97.

The law provides a "cause of action for contribution . . . when two or more persons become liable in tort to the same person for the same harm." *Lukacs*, 2023 WL 6439877, at *3-4. "A claim for contribution is viable only where a proposed third party plaintiff says, in effect, [i]f I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff." *Stewart Title Guar. Co. v. L. Offs. of David Fleischmann, PC*, No. 21-16713, 2024 WL 3585695, at *16 (D.N.J. July 30, 2024) (citation modified).

Performance Food fails to state a contractual or common law contribution claim against Ruggiero. Here, Performance Food does not point to a contractual contribution provision in its Agreement with Ruggiero. *See Sevenson Env't Servs., Inc. v. Watersolve, LLC*, No. 16-5158, 2020 WL 3468209, at *3 (D.N.J. June 25, 2020) ("Contribution is an equitable principle of equality in the sharing of a common burden arising out of contract.") (quoting *Penn. Greyhound Lines, Inc. v. Rosenthal*, 102 A.2d 587, 593 (1954)). Performance Food argues "[t]here does not need to be a 'contractual contribution clause' in any agreement for contribution to be enforced." (TPP Br. at

11

15). Notwithstanding, Performance Food fails to demonstrate how it and Ruggiero are joint tortfeasors under the NJJTCA other than through conclusory statements. (*See, e.g.*, TPC ¶ 33 "Performance Food Group is entitled to a judgment for full indemnification and/or contribution from Third-Party Defendants for any liability Performance Food Group is found to have to Plaintiff and any members of the purported class."). Additionally, Performance Food does not specify the relevant time period Ruggiero allegedly supplied calamari to Performance Food. Thus, Ruggiero is not on proper notice of the claims against it. Moreover, Performance Food does not allege any of Ruggiero's products went to Calabria. (*See generally* TPC). As such, without more, Performance Food fails to specify Ruggiero's liability and thus, does not adequately state a claim against Ruggiero for contractual or common law contribution. Similarly, Town Dock's contribution crossclaim is devoid of allegations identifying how potential liability against Ruggiero exists or how Ruggiero would be partially responsible as a joint tortfeasor. *See Jasper v. Bank of Am. Corp.*, No. 20-2842, 2020 WL 5868849, at *4 (D.N.J. Oct. 2, 2020) (dismissing defendant's indemnification and contribution crossclaim because it was merely conclusory, devoid of any supporting facts, and simply labels and conclusions).

IV. **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED IN PART**. An appropriate Order accompanies this Opinion.

DATED: September 30, 2025

JULIEN XAVIER NEALS
United States District Judge